UNITED STATES

v.

Airman Basic Raymond M. AMADOR,
United States Air Force.

ACM 35494.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 25 Nov. 2002.

Decided 30 June 2005.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Major Antony B. Kolenc.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Major Michelle M. Lindo.

Before PRATT, ORR, and MOODY, Appellate Military Judges.

## OPINION OF THE COURT

ORR, Senior Judge:

A military judge sitting as a general court-martial tried the appellant at Offutt Air Force Base (AFB), Nebraska. The court-martial convicted the appellant, pursuant to his pleas, of one specification of carnal knowledge on divers occasions in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one specification of using a means of interstate commerce to attempt to knowingly persuade, induce, entice, or coerce a child under 18 years of age to engage in sexual activity on divers occasions in violation of 18 U.S.C. § 2422(b), made applicable through Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced the appellant to a dishonorable discharge, confinement for 28 months, and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged.

The case is before this Court for review under Article 66, UCMJ, 10 U.S.C. § 866. The appellant asserts four errors for our consideration. He alleges: (1) His plea to using a means of interstate commerce to

attempt to entice a child under 18 years of age to engage in sexual activity was improvident; (2) The military judge erred in allowing an expert witness to opine as to the appellant's risk of re-offense, when the expert's assessment methodology was unreliable; (3) The addendum to the staff judge advocate's recommendation (SJAR) contained "new matter" and should have been served on the appellant and his trial defense counsel; and (4) His sentence is inappropriately severe. We find no error and affirm.

### Background

On 9 January 2002, the appellant went to a Cyber Café located on Offutt AFB to use one of its computers. After logging onto the computer, the appellant accessed the Internet and sent an instant message[1] to *krystall1368137* (hereinafter "krystall") using his screen name, *militaryafb*. The appellant stated that he was 19, single, in the military, and he wanted to know whether "krystall" wanted to chat. When "krystall" indicated that she did, the appellant asked "krystall" her age and "krystall" answered "13." In response, the appellant replied, "cool." They continued their correspondence for over three hours, during which the appellant e-mailed "krystall" several pictures of himself in his military uniform. The correspondence then turned sexual in nature and they made plans to meet on 12 January 2002 at a local mall. The correspondence ended with the two of them agreeing to chat the next day.

On 10 January 2002, the appellant sent "krystall" an instant message. After messaging with each other for awhile, they agreed to chat again on 11 January 2002. On 11 January 2002, the appellant and "krystall" chatted via instant messaging. They discussed their plans for meeting the following day at the mall. The appellant told "krystall" he knew how to please women sexually and told her what to wear so their sexual encounter would be easier and more comfortable. He also told "krystall" what he would be wearing. The appellant told "krystall" that they would first go driving and then later that afternoon they would go back to her house in Omaha, Nebraska, and have sexual intercourse. They would then take a shower, leave, and find somewhere to eat dinner and see a movie.

On 12 January 2002, the appellant showed up at the mall as scheduled. He was wearing the clothes he told "krystall" he would be wearing. Much to his dismay, "krystall" was not a 13–year–old girl. In fact, "krystall" was Mr. Scott Haugaard, an undercover Nebraska State Patrol Officer who worked in the Internet Crimes Against Children Unit. Mr. Haugaard arrested the appellant and, after being advised of his rights, the appellant confessed to his intentions with "krystall." In addition, the appellant also told Mr. Haugaard the names of other females he had met online. One of the females, KC, was only 15 years old. The appellant admitted he had sexual intercourse with KC approximately six times.

### Attempted Enticement—18 U.S.C. § 2422(b)

The appellant pled guilty to using a facility or means of interstate commerce to attempt to knowingly persuade, induce, entice, or coerce a child under 18 years of age to engage in sexual activity in violation of 18 U.S.C. § 2422(b), made applicable through Article 134, UCMJ. At trial, the prosecution introduced transcripts of the appellant's electronic correspondence with "krystall" between 9 January and 12 January 2002. The appellant stipulated that he accessed the Internet using the computers at the Cyber Café located on Offutt AFB. The computers at the Cyber Café used an Internet Service Provider whose server is located in Atlanta, Georgia. The server for the instant messaging feature was located in California.

On appeal, the appellant avers that his plea was improvident because: (1) His attempt to entice an adult posing as a minor is outside the scope of the statute because the statute was only intended to apply to actual minors; (2) The military judge failed to elicit a sufficient factual basis for the guilty plea; and (3) Applying the statute to contact between consenting adults violates the United

---

1. Instant messaging permits users to exchange private e-mails in quick succession. *United States v. Root,* 296 F.3d 1222, 1224 n. 3 (11th Cir.2002), *cert. denied,* 537 U.S. 1176, 123 S.Ct. 1006, 154 L.Ed.2d 921 (2003).

States Constitution. The appellant does not contest the accuracy of the facts the military judge elicited during the providence inquiry. The gravamen of his claim is that his conduct did not involve a minor. Therefore, he asserts his conduct was not a federal offense.

■ In determining whether a guilty plea is provident, the standard of review is whether there is a " 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Milton*, 46 M.J. 317, 318 (C.A.A.F.1997) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)). *See also United States v. James*, 55 M.J. 297, 298 (C.A.A.F.2001); *United States v. Bickley*, 50 M.J. 93, 94 (C.A.A.F.1999). If the "factual circumstances as revealed by the accused himself objectively support that plea," the factual predicate is established. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F.1996) (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)). We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996).

■ First, the appellant asserts that, because Mr. Haugaard is an adult and not a minor, his conviction violates the plain meaning of the statute. Specifically, 18 U.S.C. § 2422(b) (2002) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

In *United States v. Brooks*, 60 M.J. 495, 498 (C.A.A.F.2005), our superior court held that an actual minor victim is not required for an attempt conviction under 10 U.S.C. § 2422(b). *See also Root*, 296 F.3d at 1227; *United States v. Meek*, 366 F.3d 705, 717 (9th Cir.2004). Therefore, the fact that Mr. Haugaard was an adult is not a viable defense to the attempted enticement of a minor as the conviction requires "an intent to persuade or to attempt to persuade." *Brooks*, 60 M.J. at 498 (quoting *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000)).

■ Additionally, the appellant argues that "in order to 'attempt to persuade' a person under 18 to engage in a criminal sexual act, one must communicate that language to an *actual* minor yet be unsuccessful in those persuasion efforts." In essence, he is raising an impossibility defense. In *Brooks*, our superior court rejected this argument as well because the appellant "acted with the kind of culpability otherwise required for ... the underlying substantive offense" and "engaged in conduct which constitutes a substantial step toward the commission of the [offense]." *Brooks*, 60 M.J. at 498 (quoting *United States v. Farner*, 251 F.3d 510, 513 (5th Cir.2001)). In the instant case, the appellant testified that he asked "krystall" to meet him at the local mall so they could have sex. The appellant went to the mall at the time they agreed to meet. He acknowledged during his providence inquiry that the only thing that prevented him from having sex with a 13–year–old girl was that she turned out to be a law enforcement official. We are convinced beyond a reasonable doubt that the appellant took substantial steps toward enticing "krystall" to have sex with him in violation of the statute.

In the second prong of his attack, the appellant asserts that the military judge failed to elicit a factual basis for his guilty plea. The appellant concedes that the providence inquiry sufficiently satisfied four of the five elements required to support a conviction for a violation of 18 U.S.C. § 2422(b). However, the appellant claims that sufficient proof of the element that he attempted to engage in sex with someone who had not attained the age of 18 years was not satisfied because Mr. Haugaard *had* attained the age of 18 years. He asserts that his responses to the military judge's questions concerning this element were legal conclusions without any additional factual explanation or support.

■ The appellant cites *United States v. Jordan*, 57 M.J. 236 (C.A.A.F.2002), as authority for his assertion. In the *Jordan* case,

the appellant pled guilty by responding "Yes, sir" to the military judge's recitation of facts and legal conclusions, and the judge did not have the benefit of a stipulation of fact to use for cross-reference. Our superior court set aside the appellant's conviction, holding that the questions "were legal conclusions with which the appellant was asked to agree without any admissions from him to support them." *Jordan,* 57 M.J. at 239. Additionally, the Court recognized that the statements elicited from the accused during the providence inquiry were "not subject to the test of adversarial process," but relied heavily on the lack of a stipulation of fact. *Id.* at 238. As a result, the Court held that the plea inquiry did not establish a factual predicate for the plea.

The providence inquiry in the case sub judice was more than a recitation by the military judge of the elements of the offense. The military judge's questions also included a factual discussion of each of the elements. Moreover, the military judge questioned the appellant while referring to a stipulation of fact. The stipulation of fact stated twice that the appellant thought or believed that "krystall" was 13 years old and the appellant admitted at the start of the providence inquiry that he "chatted on the Internet with someone I thought was a 13–year–old female." During the providence inquiry, the military judge asked the appellant whether he believed that the person who received his messages was a 13–year–old girl. Next, the military judge asked whether the appellant intended to have sex with her. Additionally, the military judge asked the appellant to acknowledge that the only thing preventing him from having sex with a person he thought was 13–years–old was that she turned out to be a law enforcement officer. The appellant answered "Yes, sir" to all three questions. At the conclusion of the questioning, the appellant indicated that he understood the military judge's questions and did not have any trouble understanding anything during the inquiry.

While the appellant argues that his responses to the military judge's questions were legal conclusions with no factual support, we disagree. Unlike in the *Jordan*

case, this appellant signed a stipulation of fact negotiated as part of the adversarial process. Even though the appellant's responses to the military judge's questions were similar to *Jordan,* the types of questions in this case were different than those in *Jordan.* In the instant case, the questions included a factual component that afforded the appellant the opportunity to discuss and explain his conduct. Additionally, the judge expressed his concern that the appellant was having trouble communicating because of his speech impediment. The military judge went so far as to let the appellant shake his head in response to some of the questions. While the military judge could have asked the appellant additional questions, his stated concern for the appellant's difficulty communicating was a reasonable basis for limiting the questions during the providence inquiry, taking into consideration he also had the benefit of a detailed stipulation of fact. We consider this a unique factor in assessing the providency of this particular plea. *See generally United States v. Sweet,* 42 M.J. 183 (C.A.A.F.1995). We are convinced that the military judge elicited sufficient facts from the appellant to establish a factual predicate for his guilty plea.

■ In the third prong of his attack, the appellant analogizes the decision in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), and argues that he cannot be convicted of a crime by engaging in unlawful speech where there was no actual child taking part in the conversation. According to the appellant, "Congress may pass a law that protects children from abuse, but that statute needs to be limited to the protection of actual children." In the alternative, the appellant asserts that because he and Mr. Haugaard are both consenting adults, the statute is unconstitutional as applied to the facts of this case because the Supreme Court's decision in *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), protects his fundamental right to engage in private, consensual conversations with another adult. We disagree with both of his assertions.

The statute does not regulate the content of speech; rather, it criminalizes conduct

624

that incidentally involves speech. *United States v. Kufrovich*, 997 F.Supp. 246, 254 (D.Conn.1997), *overruled in part on other ground by United States v. Griffith*, 284 F.3d 338, 351 (2d Cir.2002). The First Amendment does not give the appellant the right to attempt to persuade minors to engage in illegal sex acts. *Bailey*, 228 F.3d at 639. We conclude the appellant's conviction under 18 U.S.C. § 2422(b) does not offend the Constitution. *See Root*, 296 F.3d at 1222; *Farner*, 251 F.3d at 510; *United States v. Riccardi*, 258 F.Supp.2d 1212, 1226 (D.Kan. 2003).

Based on the above, we find the military judge did not abuse his discretion by accepting the appellant's guilty plea.

### Expert Testimony

█ The appellant contends the military judge abused his discretion by allowing an expert witness to testify during the sentencing proceedings about the appellant's risk of recidivism. Specifically, the appellant argues that the expert's opinion was improper because the expert's assessment methodology was unreliable, and because the expert did not personally evaluate the appellant. We find these arguments to be without merit.

Dr. Dale Arnold, a prosecution witness, testified as an expert about the appellant's likelihood of recidivism. The trial defense counsel challenged the expert's credentials and his methodology in formulating an opinion, citing *United States v. McElhaney*, 54 M.J. 120 (C.A.A.F.2000), *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), as authority for his position. The crux of his argument was that Dr. Arnold did not have sufficient personal information about the appellant to form an opinion. Dr. Arnold testified that the trial defense counsel had advised the appellant not to submit to a personal interview with him. When pressed by the military judge, trial defense counsel acknowledged that there was no bright line rule that states an expert may only testify if he has interviewed an accused.

A psychologist does not have to personally interview an accused before testifying.

*Barefoot v. Estelle*, 463 U.S. 880, 904, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *United States v. Stinson*, 34 M.J. 233, 239 (C.M.A. 1992). In the instant case, Dr. Arnold testified that it was "fairly common" for him to give a risk assessment based solely on a records review because there were cases where he personally refused to participate in an interview or the accused declined to be interviewed. He also testified that he formulated his opinion in this case using the information he had available and that his opinion is "solidly based." He did acknowledge, however, that he did not have an opportunity to interview the appellant personally and this was a limiting factor preventing him from making a better assessment. Here, the witness was qualified as an expert, the testimony was within the limits of his expertise, it was based upon a sufficient factual basis to make it relevant, and its relevance outweighed the potential for unfair prejudice. *Stinson*, 34 M.J. at 238–39. We hold that the military judge did not abuse his discretion in admitting this testimony.

Even if the military judge erred in admitting the testimony of the expert, we find no prejudice. We need not speculate about the impact of Dr. Arnold's testimony on the appellant's sentence because the military judge stated the impact in open court. Specifically, he stated:

And for purposes of appellate review I do want to comment that in the event that I ruled incorrectly on the testimony of Doctor Arnold, I know the court may feel a need to assess what impact that testimony had on me, the sentencing authority in that case, being a bench trial of course it's the judge. And in this case we have—we couldn't do this in a member's case but I can tell you that, in fact, his testimony probably lowered the maximum confinement or probably lowered a little bit the confinement that I imposed because of his observations about the potential for some rehabilitative potential. So, if on review, appellate authorities want to know whether or not my error in considering that testimony worked to the detriment of the accused, in fact it did not. It didn't so they

can consider that for whatever it means on appellate review.

Because we find neither error nor prejudice, we decline to grant the appellant's request that we reassess the sentence.

### Post-trial Processing

As required by Article 60(d), UCMJ, 10 U.S.C. § 860(d), the staff judge advocate (SJA) prepared a formal recommendation for the convening authority, and served it upon the appellant and his trial defense counsel for review and comment. The SJA recommended that the convening authority approve the sentence as adjudged. The appellant and his counsel submitted a request for clemency, specifically asking that the convening authority reduce the confinement so that he could take part in raising his newborn twin sons and receive mental health treatment. Additionally, the trial defense counsel asked the convening authority to disapprove the dishonorable discharge because the appellant should not have been allowed to enter the Air Force in the first place because of his "speech impediment and his mental health issues."

Thereafter, the SJA prepared an addendum to the earlier recommendation, and advised the convening authority that he must consider the matters submitted by the defense. Additionally, the SJA advised the convening authority that if he considered matters outside the record of trial adverse to the appellant, the appellant must be notified and given an opportunity to respond. Once again, the SJA recommended the convening authority approve the sentence as adjudged. The convening authority signed the indorsement to the addendum that stated "I have reviewed and considered all matters presented before taking action on this case. The findings and sentence are approved as adjudged."

The appellant asserts that the addendum to the SJAR contains "new matter" in three primary areas: (1) The SJA relied on the testimony of Dr. Arnold to argue that the appellant would be "far better served" by participating in treatment while in confinement; (2) The SJA questioned the accuracy of the appellant's claim to be the father of the newborn twins; and (3) The SJA's comments concerning the appellant's conduct were inflammatory. Because the SJA discussed these three issues, the appellant avers that the SJA should have served him and his counsel with a copy of the addendum and been afforded an opportunity to provide comment. We disagree.

█ The standard of review for determining whether the addendum to the SJAR contained "new matter" is de novo. *United States v. Key*, 57 M.J. 246, 248 (C.A.A.F. 2002) (citing *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F.1997)). Rule for Courts–Martial (R.C.M.) 1106(f)(7) only requires service of an addendum if it contains "new matter." In *Chatman*, the court held that, even if there were "new matter" in an addendum, when the appellant complains about the SJA's failure to serve it on the appellant and his trial defense counsel, the appellant must "demonstrate prejudice by stating what, if anything would have been submitted to 'deny, counter, or explain' the new matter." *Chatman*, 46 M.J. at 323.

█ In the instant case, the addendum does not contain "new matter." In fact, the statements in the addendum are directly attributable to the evidence in the record, or are a discussion of the correctness of the trial defense counsel's comments in response to the SJAR. As a result, the contested statements are not "new matter." *See* R.C.M. 1106(f)(7), Discussion. Even if the addendum contains "new matter," we find no prejudice. The proposed evidence submitted by the appellant's trial defense counsel to "deny, counter, or explain" the "new matter" was readily available to him at the time he filed the appellant's original clemency submission. Additionally, all of the issues submitted in his affidavit were raised in his clemency submission. The fact that the appellant's counsel now wants to provide a more definitive statement explaining his original submission does not demonstrate prejudice.

### Sentence Appropriateness

The appellant contends that his sentence is inappropriately severe based upon the nature of the offenses, the fact that there was no victim to the attempted inducement of a mi-

nor, and the mitigating factors highlighted during the trial defense counsel's sentencing argument. We do not agree.

Article 66(c), UCMJ, requires this Court to approve only that sentence, or such part or amount of the sentence, as it finds correct in law and fact and determines should be approved. The determination of sentence appropriateness "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). In order to determine the appropriateness of the sentence, this Court must consider the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982); *United States v. Alis*, 47 M.J. 817, 828 (A.F.Ct.Crim.App.1998). "[S]entence appropriateness should be judged by 'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *Snelling*, 14 M.J. at 268 (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81, 1959 WL 3587 (C.M.A. 1959)).

We do not find this sentence inappropriately severe considering this appellant and the specific nature of his crimes. The appellant targeted young and vulnerable children for his indecent communications and demonstrated his willingness to carry out his proposals. In fact, he had sexual intercourse with a 15–year–old girl. Additionally, the appellant received three nonjudicial punishment actions and many other administrative actions intended to correct his behavior. Considering all the circumstances of the case and the appellant's poor service record, we are convinced the sentence approved is appropriate.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *Reed*, 54 M.J. at 41. Accordingly, the approved findings and sentence are

AFFIRMED.