UNITED STATES, Appellee,

v.

Richard M. LATORRE, Jr., Technical Sergeant, U.S. Air Force, Appellant.

No. 99–0499.
Crim.App. No. 33262.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 2, 2000.

Decided July 14, 2000.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and SULLIVAN, GIERKE, and EFFRON, JJ., ·joined.

For Appellant: *Norman R. Zamboni* (argued); *Colonel Jeanne M. Rueth* and *Lieutenant Colonel James R. Wise* (on brief); *Captain Tishlyn E. Taylor.*

For Appellee: *Major Bryan T. Wheeler* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief); *Major Kenneth A. Arnold.*

Senior Judge COX delivered the opinion of the Court.

On January 15 and 16, 1998, a military judge sitting alone as a general court-martial convicted appellant, consistent with his pleas, of 2 specifications of committing indecent acts upon the body of a female under 16 years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was also convicted of 1 specification of committing sodomy with a child under 12 years of age, in violation of Article 125, UCMJ, 10 USC § 925. Because he had no plea agreement, the maximum potential sen-

tence to confinement was life. *See* para. 51e(3), Manual for Courts–Martial, United States (1998 ed.). However, the military judge sentenced him to 12 years' confinement, along with a dishonorable discharge and reduction to the grade of E–1.

The convening authority approved the sentence, but pursuant to Article 58b(b), UCMJ, 10 USC § 858b(b), he waived for 6 months, a portion of appellant's automatic forfeitures for the benefit of appellant's dependents. The Court of Criminal Appeals affirmed the findings of guilty and the sentence in an unpublished opinion.

We granted review to determine if the military judge erred by allowing the Government's expert witness to testify on sentencing about the possibility of undiscovered crimes committed by sex offenders generally.[1] We hold that admission of this expert testimony, if error, was harmless error. *Cf. United States v. George*, 52 MJ 259 (2000).

### BACKGROUND

Appellant lived next door to a young girl, AS, who came to appellant's house to play when his two young sons visited him. In September of 1997, when AS was 7, appellant's son, BL, saw his father engaged in sexual acts with AS. BL immediately told his brother, JL, and later his mother about what he had witnessed. During questioning by OSI agents, appellant admitted that he had been committing sexual indecencies against AS on numerous occasions for a year, and that he had first become sexually attracted to AS when she was 6.

### DISCUSSION

During the sentencing hearing, one government witness was Dr. Roby, a psychologist with expertise in evaluating sex offenders and their victims. Earlier in the proceeding, the military judge made note

of a potential objection the defense had raised during a conference under RCM 802, Manual, *supra*. He said:

> The defense indicated that they had an objection, there was a potential objection to one of the government witnesses, the expert witness, testifying as to recidivism rates and predictions as to their client's potential for rehabilitation and that sort of thing, *on the basis that the expert had an inadequate basis upon which to express such an opinion. I told counsel that we would resolve that at the appropriate time.*

(Emphasis added.) Thus, the judge specifically invited counsel to renew the objection as evidence was proffered, it being a judge-alone trial.

Throughout 60 pages of testimony, Dr. Roby discussed without defense objection sex-offender treatment programs and pedophile characteristics. He also discussed, without objection, the problems primary and secondary victims[2] of sexual abuse encounter, and recidivism rates for sexual offenders. Dr. Roby "estimated" a psychological diagnosis for appellant, and speculated about treatment programs and treatment lengths suitable for appellant.

During cross-examination, defense counsel asked Dr. Roby to discuss offender treatment programs and his suggestions for treatment. Dr. Roby's response included the following:

> I believe that there should be a way of assessing honesty with the individual. The way that we typically do that is we actually have the offenders go through a series of polygraph examinations as we are going through the program. The initial one is to try to help bring out any other victimizations or inappropriate behavior that has occurred that they have not admitted to at that point in time. And, the vast majority

1. Specifically, the issue before this Court is:
   WHETHER THE MILITARY JUDGE ERRED BY ALLOWING THE GOVERNMENT'S EXPERT WITNESS TO TESTIFY THAT SEX OFFENDERS USUALLY COMMIT SEVERAL CRIMES PRIOR TO THE CRIME FOR WHICH THEY ARE CURRENTLY BEING PROSECUTED, AND THAT SOME SEX OF-

FENDERS LEARN HOW TO "GET AWAY" WITH THEIR CRIMES SO THAT THEIR OFFENSES ARE NOT DISCOVERED.

2. Here, AS was a "primary victim" of the abuse, while JL and BL were "secondary victims" because they were not directly harmed by the abuser, but still suffered effects.

do come up with *new information* that was not available to the courts at the time they were sentenced.

(Emphasis added.)

On re-direct, the Government asked Dr. Roby to define "new information." Only here did defense counsel object, saying, "Sir, I'm going to object to this line of reasoning. I think that the idea that we are going to be getting into something to suggest that Sergeant LaTorre has got other victims out there, or has done more, I think is highly prejudicial and should not be permitted."

Trial counsel argued that it was the defense that opened this door, and the judge responded: "Well, I'll let you ask the next question, and see where it goes, because defense counsel did ask questions about that." So the judge overruled the defense objection "at this point." Accordingly, trial counsel was allowed to ask the witness, "[W]hen an offender enters treatment, what type of new information is elicited?" To which, Dr. Roby responded:

> We usually get further information about other inappropriate acts, oftentimes felonious in nature. We ended up adopting, within the past three years, the use of the polygraph, due to the fact that we found that oftentimes, just utilizing the polygraph, regardless of what came out from it, caused the individual to suddenly have a greater ability in terms of being able to remember other offenses that they have committed. We just reviewed thirty cases that we sent over for polygraph exams. Out of those thirty cases, twenty-one individuals came up with new, *felonious offenses* that they had never disclosed, nor did anyone else have any understanding of or knowledge about.

Again, it was the defense, on recross-examination, who extracted from Dr. Roby the fact that the "felonious offenses" he referred to were sexual offenses.

At no time, either during opening statement, argument on the objection, closing argument, or any other point in the proceeding, did trial counsel suggest that the witness's testimony established or implied that appellant had committed offenses against other children.

A. Receipt of Expert Testimony

■ Mil.R.Evid. 702 and 703, Manual, *supra*, govern expert testimony. These rules state that, if special knowledge testimony is necessary to assist the fact finder, experts may testify using information reasonably relied upon by other experts in the particular field. The Supreme Court clarified these rules in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[3] There, the Supreme Court held that the basis of expert opinion must be scientifically sound: "Proposed testimony must be supported by ... 'good grounds,' based on what is known." *Id.* at 590. The Court gave various factors for consideration in this analysis, such as whether the theory has been tested, whether it has been reviewed by others in the area, and whether it has gained general acceptance. *Id.* at 593–96, 113 S.Ct. 2786. The Court went on to say that another requirement of the rules is that proffered expert testimony must also be relevant and helpful to the factfinder in resolving the issue in question.

One concern we must deal with is the fact that the discussion regarding the expertise of the witness and his ability to express his opinions about this case took place "off the record," at a conference under RCM 802. No specific objection was made on the record. "Mil.R.Evid. 103(a)(1) requires a timely objection to preserve an evidentiary issue for appellate review, unless the evidentiary ruling rises to the level of plain error." *United States v. Cardreon*, 52 MJ 213, 216 (1999). To resolve this appeal, however, we will assume that appellant made a timely objection to the pertinent portion of the expert's testimony, based on foundation. Further, although it was appellant who opened the door to the testimony, we will assume that the Government had a duty to lay a foundation for the testimony it elicited.

---

3. Specifically, the Court addressed Fed.R.Evid. 702 and 703, which are the Military Rules of

Evidence equivalent in civilian federal courts.

Under such circumstances, we would agree that the Government did not lay an adequate foundation. There was no showing that Dr. Roby's methods or conclusions about offenders were accepted by the scientific community at large or had even been reviewed by it. Apparently, he was basing his conclusions on his own work with a sex offender program at Utah State Prison.[4] Undoubtedly, his description of his study was too cursory, and his group too limited, to meet the *Daubert* standards in order to project broad conclusions on others.[5]

At the same time, it is not apparent how this study, *per se*, was relevant or useful. Even if we accept as scientific fact that 21 of 30 apprehended pedophiles has committed sexual offenses against other children, which group does appellant (or anyone) fall into, the 21 or the 9?[6] The Government adduced no testimony or other evidence to indicate that there was a way of predicting this.

### B. Prejudice

■ When determining whether evidence unduly prejudiced appellant, we use the four-prong analysis formulated in *United States v. Weeks*, 20 MJ 22, 25 (CMA 1985), and evaluate: (1) the strength of the Government's case; (2) the defense theory; (3) the materiality of the evidence; and (4) the quality of the evidence.[7]

■ Regarding the strength of the government case, appellant was caught by his son in the act of sodomizing a 7-year old girl.

Upon interrogation, he admitted that he had sexually abused her periodically for over a year. In addition to the testimony of Dr. Roby, there was testimony from AS's family and teacher about the trauma she had experienced and the effect it had on her and her family. Most compelling, however, was the actual testimony of AS and appellant's two sons and the obvious misery, anger, and confusion that this caused all three of them.

Regarding the defense case for leniency, the best appellant can argue is that there was only one victim and that he felt remorse.[8] He also argues, without scientific support, that he can be readily rehabilitated and, thus, required little incarceration.

As for the materiality and quality of the evidence, we must strain a bit to even find the "evidence." Certainly, Dr. Roby never expressed the opinion that appellant had committed, or must have committed, offenses against other victims, nor did the Government advance such an argument. Further, the military judge's noncommittal remark, "Well, I'll let you ask the next question, and see where this goes, because defense counsel did ask questions about that," hardly belies a jurist who has lost all notions of relevance and materiality. We presume that the judge took the information for what it was worth, and nothing more. *See United States v. Raya*, 45 MJ 251, 253 (1996).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

4. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

5. *See, e.g., Mac Sales Inc. v. E.I. Du Pont de Nemours & Co.*, 24 F.3d 747, 752 (5th Cir.1994), where the Court of Appeals affirmed the lower court's finding that expert testimony may be excluded if it lacks adequate foundation. In that case, the expert testified about foreign and domestic markets when he had actually only studied the domestic market.

6. On appeal, appellant also complains of a fragment of Dr. Roby's testimony wherein he stated that some pedophiles who have been caught, incarcerated, and ultimately released are able to re-offend without being discovered, "[because]

they've been educated by the system as to how now they can get away with it[.]" This testimony came in, without renewed defense objection, after the witness had testified extensively about recidivism among pedophiles, under questioning by both counsel and the military judge. We hold that this objection was waived and, in any event, the evidence was cumulative a large quantity of evidence already received. *United States v. Cardreon*, 52 MJ 213, 216 (1999).

7. While the test was formulated to determine prejudice at guilt or innocence phase of trial, we feel it also appropriate in this context.

8. Nevertheless, he projected blame onto her and other forces outside of himself. Trial defense counsel even conceded during closing argument that appellant's confession was "minimiz[ing]."