UNITED STATES, Appellee,

v.

**Michael R. McELHANEY, Staff Sergeant, U.S. Air Force, Appellant.**

No. 99–0940.
Crim.App. No. 32522.

U.S. Court of Appeals for
the Armed Forces.

Argued April 5, 2000.

Decided Sept. 14, 2000.

Crawford, Chief Judge, filed opinion concurring in part and dissenting in part.

Sullivan, J., filed opinion concurring in part and dissenting in part.

EFFRON, J., delivered the opinion of the Court, in which GIERKE, J., and COX, S.J., joined. CRAWFORD, C.J., and SULLIVAN, J., each filed an opinion concurring in part and dissenting in part.

For Appellant: *Major Stephen P. Kelly* (argued); *Colonel Jeanne M. Rueth* (on brief); *Lieutenant Colonel James R. Wise.*

For Appellee: *Captain James C. Fraser* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of an attempt to commit rape, an attempt to commit carnal knowledge with a child under 16 years of age, carnal knowledge with a child under 12 years of age, carnal knowledge with a child under 16 years of age, sodomy with a child under 16 years of age, and four specifications of indecent acts

with a child under 16 years of age, in violation of Articles 80, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, 925, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 20 years, and reduction to the lowest enlisted grade. The convening authority approved the findings and that portion of the sentence providing for a dishonorable discharge, confinement for 15 years, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 50 MJ 819 (1999).

On appellant's petition, we granted review of the following issues:

I. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT THE STATUTE OF LIMITATIONS APPLICABLE TO TRIALS IN FEDERAL COURTS FOR OFFENSES INVOLVING THE SEXUAL OR PHYSICAL ABUSE OF A CHILD (18 USC § 3283) APPLIES TO TRIAL BY COURT–MARTIAL IN LIEU OF ARTICLE 43, UCMJ.

II. WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTIONS TO COMPEL THE PRODUCTION OF MR. JUANITO PEREZ, SA ERNEST O. JOY, JR., AND MR. THOMAS RICHTER AS WITNESSES.

III. WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN LIMITING THE CROSS-EXAMINATION OF THE VICTIM.

IV. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT APPELLANT WAIVED HIS PRIVILEGE UNDER RCM 504(b) CONCERNING COMMUNICATIONS MADE TO HIS WIFE.

V. WHETHER DR. MORALES, AN EXPERT FOR THE PROSECUTION, IMPROPERLY COMMENTED ON THE "FUTURE DANGEROUSNESS" OF APPELLANT WHEN HE DID NOT HAVE AN ADEQUATE BASIS TO FORM AN OPINION ON THE SUBJECT.

We hold that the lower court erred in applying the statute of limitations in 18 USC § 3283 in lieu of the statute of limitations codified in Article 43, UCMJ, 10 USC § 843. We affirm the lower court's decisions on Issues II, III, and IV. Our disposition of Issue I, which will result in further proceedings on the sentence, makes it unnecessary to determine whether there was any prejudicial error under Issue V.

## I. STATUTE OF LIMITATIONS

### A. Background

The charges against appellant arose from his sexual relationship with his wife's niece, VR. Appellant's wife was VR's guardian in the Philippines, and the child lived with the couple for more than a year when she was about 8 years old. This arrangement ended when appellant was transferred back to the United States in August 1988. Appellant continued the relationship with VR after the move by corresponding with her and visiting her several times over the years. The nature of the relationship between appellant and VR was discovered by appellant's wife when she read some of the correspondence in 1994.

Appellant was charged with 11 offenses stemming from acts committed during the 7-year affair.[1] The charges were received by the summary court-martial convening authority on February 2, 1996. Three of the offenses—rape, one specification of sodomy, and one specification of indecent acts—were alleged to have been committed between August 1, 1987, and August 31, 1988. At trial, appellant moved to dismiss these charges as barred by the 5–year statute of limitations in Article 43(b)(1). The Government argued that the longer statute of limitations in 18 USC § 3283, which permits the prosecution of offenses involving the sexual and physical abuse of children until the victim reaches age 25, had superceded the 5–year limitation in Article 43(b)(1). The military judge agreed, ruling that 18 USC § 3283 applies to courts-martial and that it was applicable to the charges and specifications in appellant's case.

---

1. One specification of an indecent act with a child was withdrawn after arraignment.

The judge also ruled that because rape is a crime punishable by death under the UCMJ, it was not subject to any time limitations on punishment under Article 43(a).

On appeal, the Government conceded at the court below that the military judge erred by applying 18 USC § 3283 to the charges against appellant. The lower court rejected the concession and affirmed appellant's convictions.[2] 50 MJ at 822. The court held that the statute of limitations found in 18 USC § 3283 applies to courts-martial involving physical or sexual abuse of a child, resting its decision on "the unambiguous language in the [Victims of Child Abuse Act] VCAA; the legislative history; the implementation of the VCAA by the Department of Defense; and the previous judicial application of the VCAA to members of the armed forces." *Id.* at 826.

### B. Consideration of Generally Applicable Statutes in the Military Justice System

■ The Constitution grants Congress "plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline." *Weiss v. United States,* 510 U.S. 163, 177, 114 S.Ct. 752, 760, 127 L.Ed.2d 1 (1994); *see* U.S. Const. art. I, § 8, cl. 14. Congress has exercised its control over military discipline through the Uniform Code of Military Justice, which "establishes an integrated system of investigation, trial, and appeal that is separate from the criminal justice proceedings conducted in the U.S. district courts." *United States v. Dowty,* 48 MJ 102, 106 (1998).

■ Although there are many similarities between civilian criminal proceedings and our own, and although we frequently look to civilian statutes for guidance, the military and civilian justice systems are separate as a matter of law. *See id.* Amendments to Title 18 of the U.S.Code (the Federal Criminal Code), changes to the Federal Rules of Criminal Procedure, and changes to the Federal Rules of Evidence "do not directly affect proceedings under the Uniform Code of Military Justice except to the extent that the Code or the Manual for Courts-Martial specifically provides for incorporation of such changes." *Id.; see, e.g.,* Arts. 36 and 134 (clause 3), UCMJ, 10 USC §§ 836 and 934; Mil.R.Evid. 101(b)(1), Manual for Courts-Martial, United States (1998 ed.).

■ Congressional intent to separate military justice from the federal criminal system, evidenced by our distinct and comprehensive criminal code, requires us to "exercise great caution in overlaying a generally applicable statute specifically onto the military system." *Dowty,* 48 MJ at 111. Employing that cautious approach in *Dowty,* we decided that it was necessary to apply the integral, procedural aspects of the Right to Financial Privacy Act because the tolling provision at issue was directly tied to the beneficial provisions of that statute, which had already been implemented by the Department of Defense and judicially applied to servicemembers.

*Dowty's* status as an exception which proves the rule of separateness is underscored not only by the limiting language of that opinion, but also by our decision in *United States v. Spann,* 51 MJ 89 (1999). In *Spann,* we declined to apply § 502 of the Victims' Rights and Restitution Act of 1990, 42 USC § 10606 to courts-martial (expressing a preference for a victim's presence in the courtroom at trial). We observed that the essentially civilian nature of the federal statute was in conflict with Mil.R.Evid. 615, and we added that the President had not amended the rule to address whether, or how, the civilian procedures should apply in military proceedings under Article 36 of the UCMJ. We emphasized that Congress intended the deliberative process of amending the Manual for Courts-Martial to prevail over "uncritical application of statutes outside the UCMJ." 51 MJ at 93.

---

**2.** At trial, appellant was convicted of the lesser-included offense of attempted rape, making the military judge's ruling with respect to Article 43(a) and the charge of rape inapplicable on appeal. The lower court found that as 18 USC § 3283 applied to courts-martial and to appellant's case, the attempted rape conviction was swept within the ambit of the statute.

### C. Discussion

■ Issue I raises the question of whether the statute of limitations in the Victims of Child Abuse Act, currently codified at 18 USC § 3283, supercedes Article 43, the statute Congress enacted specifically for the military justice system. As a question of law, this issue is subject to *de novo* review. 1 Steven Childress & Martha Davis, *Federal Standards of Review* § 2.13 (3d ed.1999).

Subject to exceptions not at issue in this case, Article 43(b)(1) provides that:

[A] person charged with an offense is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.

This provision was last amended in 1986, when the limitation period was increased from 2 to 5 years. National Defense Authorization Act for Fiscal Year 1987, Pub.L. No. 99–661, § 805(a), 100 Stat. 3816, 3908 (1986).

The other statute of limitations at issue in the present case, 18 USC § 3283, was originally enacted as part of the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789. The Act was a lengthy compilation of diverse provisions, ranging from Title I ("International Money Laundering") to Title XXXVII ("National Child Search Assistance Act of 1990"). Title II, the "Victims of Child Abuse Act of 1990" (VCAA), addressed a wide variety of problems related to the physical and sexual abuse of children, as reflected in the six subtitles of the Act: Subtitle A, "Improving Investigation and Prosecution of Child Abuse Cases"; Subtitle B, "Court–Appointed Special Advocate Program"; Subtitle C, "Child Abuse Training Programs for Judicial Personnel and Practitioners"; Subtitle D, "Federal Victims' Protections and Rights"; Subtitle E, "Child Care Worker Employee Background Checks"; and Subtitle F, "Grants for Televised Testimony."

In addition to the various funding mechanisms and specialized programs established by the VCAA, Subtitle D created rights for victims of child abuse, as detailed in § 225 of the Act. Section 225 contained ten substantive parts, codified at 18 USC § 3509, setting forth special procedures and protections for children who are victims of child abuse and who participate as witnesses in prosecutions: § 3509(b), "Alternatives to Live In-Court Testimony"; § 3509(c), "Competency Examinations"; § 3509(d), "Privacy Protection"; § 3509(e), "Closing the Courtroom"; § 3509(f), "Victim Impact Statement"; § 3509(g), "Use of Multidisciplinary Child Abuse Teams"; § 3509(h), "Guardian Ad Litem"; § 3509(i), "Adult Attendant"; § 3509(j), "Speedy Trial"; and § 3509(k), "Extension of Child Statute of Limitations."

The provision at issue in the present appeal is subsection (k), currently codified at 18 USC § 3283, which states:

No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years.

Congress did not expressly address the relationship of this provision to the UCMJ in either the language of the VCAA or its legislative history.

We begin our consideration of the applicability of the VCAA's statute of limitations to the UCMJ by reading this provision in context—as one subsection of § 3509. The text of § 3509 demonstrates congressional intent to apply its provisions in federal district courts, not courts-martial.

Section 3509(b)(1)(A), for example, which facilitates the testimony of children via closed-circuit television, states that a "guardian *ad litem*" is one of the individuals authorized to request this form of testimony. Subsection (b)(1)(D) states that a child's testimony will be transmitted for viewing by the "defendant, *jury*, judge, and public." (Emphasis added.) Subsection (b)(2)(B)(v) requires the "clerk of the court" to be responsible for the resultant videotape of testimony. Subsection (c)(1) states that the statute shall not affect Fed.R.Evid. 601, and subsection (d)(1)(B)(i) directs Department of Justice employees to comply with certain privacy protections in the conduct of a case. These provisions clearly reflect congressional intent

to apply § 3509 to proceedings in federal district courts, where cases are prosecuted by the Department of Justice in tribunals served by clerks of court, the proceedings are subject to the Federal Rules of Evidence, verdicts are rendered by juries, and judges are authorized to appoint guardians *ad litem*. None of the foregoing terms apply in the military justice system, where courts-martial are convened by military officers for the trial of a single case, the prosecution function is performed by judge advocates appointed as trial counsel, verdicts are rendered by the members of the court-martial, and the proceedings are governed by the Military Rules of Evidence.

The statute of limitations in § 3509 does not provide a procedure that is necessary to the proper functioning of the other components of § 3509. This is in contrast to the tolling provision in the Right to Financial Privacy Act, 12 USC § 3419, which was at issue in *Dowty*. The tolling provision was an integral part of the larger statutory scheme, which permitted a person—including members of the armed forces—to delay criminal proceedings by seeking a court order to prevent investigators from accessing personal bank accounts. Without the tolling provision, there was a distinct possibility that a person could escape prosecution by invoking the protective portions of the Act to delay a prosecution. No such integral relationship exists between the VCAA and its statute of limitations. The question of whether the policy behind the extended statute of limitations in the VCAA warrants application in courts-martial is a matter for consideration by Congress. *See Spann, supra* at 93.

We specifically reject the Government's suggestion that because there is no language in the VCAA which states that it applies only in federal district courts or that it does not apply in courts-martial, we should adopt the statute of limitations in the VCAA. The enactment and modification of federal criminal justice legislation has become one of the most significant areas of congressional activity. The Government's approach would require us to apply any broadly-worded, federal criminal law amendment to the military justice system, regardless of its impact on

the powers of commanders and the rights of servicemembers. Although Congress from time to time has stated that some statutes within Title 18 do not apply to the UCMJ, this has not been a regular or consistent drafting practice, and we decline to insist that Congress—in dealing with civilian criminal law matters—must expressly exempt courts-martial from the coverage of broadly worded statutes. *See Dowty, supra* at 109.

We hold that the court below erred when it applied the statute of limitations codified at 18 USC § 3283 to appellant's court-martial. Article 43 provides the applicable statute of limitations. Accordingly, specification 1 of Charge I and specification 1 of Charge IV shall be dismissed as outside the statute of limitations.

## II. PRODUCTION OF WITNESSES

### A. Legal Requirements

Article 46, UCMJ, 10 USC § 846, provides all parties to a court-martial with "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Under RCM 703(b)(1), Manual, *supra*, "[e]ach party is entitled to the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be relevant and necessary." *See also* Mil.R.Evid. 401. A military judge's ruling on a request for a witness is reviewed for abuse of discretion. *United States v. Rockwood*, 52 MJ 98, 104 (1999). The decision on a request for a witness should only be reversed if, "on the whole," denial of the defense witness was improper. *United States v. Ruth*, 46 MJ 1, 3 (1997). We will not set aside a judicial denial of a witness request "unless [we have] a definite and firm conviction that the [trial court] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Houser*, 36 MJ 392, 397 (CMA 1993), quoting Judge Magruder in The New York Law Journal at 4, col. 2 (March 1, 1962).

Factors to be weighed to determine whether personal production of a witness is necessary include: the issues involved in the case and the importance of the requested witness to those issues; whether the witness is desired on the merits or the sentencing portion of the case; whether the witness's testimony would be merely cumulative; and the availability of alternatives to the personal appearance of the witness, such as depositions, interrogatories, or previous testimony. *United States v. Tangpuz*, 5 MJ 426, 429 (CMA 1978); *Ruth, supra* at 4. Timeliness of the request may also be a consideration when determining whether production of a witness is necessary. RCM 703(c)(2)(C); *United States v. Reveles*, 41 MJ 388, 394 (1995).

## B. Appellant's Requests for Production

Appellant made pretrial requests, and submitted pretrial motions, for the production of three witnesses: Mr. Juanito Perez, Special Agent Ernest O. Joy, and Mr. Thomas Richter. The factual and legal considerations with respect to each requested witness are considered separately below.

### 1. *Mr. Juanito Perez*

In support of the request for Mr. Perez, defense counsel stated that the proposed witness had known the victim's family from 1987–1991. According to defense counsel, VR claimed that Mr. Perez had raped her when she was 10 years old. Defense counsel asserted that Mr. Perez would testify that the rape complaint was false and that he would provide an opinion on VR's character for untruthfulness. Defense counsel had not talked with Mr. Perez and relied upon statements Mr. Perez made to VR's aunt to support his assertions.

The military judge denied the motion to produce Mr. Perez. In a written ruling, the judge held the defense had failed to show that the testimony was relevant and material. The military judge found that there was an insufficient foundation for an opinion as to VR's truthfulness, that Mr. Perez's testimony would be inadmissible as extrinsic evidence under Mil.R.Evid. 608(b), and that an alleged

rape by Mr. Perez provided no motive for VR to lie about appellant's relationship with her. The military judge concluded that the testimony of Mr. Perez was not relevant or material.

We hold that the military judge did not abuse his discretion in denying the request for Mr. Perez. Testimony from Mr. Perez concerning the rape allegation made against him by VR, as described by defense counsel, would have been irrelevant and would have provided an insufficient basis upon which to attack VR's credibility. The allegation against Mr. Perez and his unsurprising denial had no bearing on the validity of VR's allegations against appellant, and they would not have established a motive on VR's part to fabricate claims against appellant. *See United States v. Velez*, 48 MJ 220, 227 (1998). This prior rape allegation falls short of developing a relevant history of false sexual complaints by VR.

### 2. *Special Agent Ernest O. Joy*

Defense counsel requested the presence of Special Agent Joy, who had interviewed VR after the allegations of appellant's abuse came to light, to attack her credibility. Defense counsel claimed that Special Agent Joy would testify about VR's poor recall of time frames, coaching by VR's mother, prior inconsistent statements by VR, and the fact that VR was punished for her relationship with appellant. Trial counsel countered by introducing an affidavit from Special Agent Joy indicating that he would not support the claims of poor time-frame recall, coaching, or inconsistency. The affidavit also established that Special Agent Joy had no personal knowledge of VR being punished for her relationship with appellant. The military judge denied the motion to produce Special Agent Joy, specifically finding that "there has been no showing of relevance and necessity sufficient to require his testimony."

The military judge did not abuse his discretion by denying the request to produce Special Agent Joy. Although poor recollection, coaching, and prior inconsistent statements could have reflected negatively on the truthfulness of VR's trial testimony, the mili-

tary judge was presented with clear evidence that Special Agent Joy would not testify as the defense had proffered. In fact, the agent's testimony arguably would have been counterproductive for the defense, as it indicated that VR related details of the encounters, was interviewed outside the presence of her mother, and was not inconsistent in her portrayal of events. As to any punishment suffered by VR because of her relationship with appellant, Special Agent Joy had no personal knowledge of the matter, so he could not testify about a subject of which he had no knowledge. *See* Mil.R.Evid. 602.

### 3. *Mr. Thomas Richter*

 Defense counsel requested Mr. Thomas Richter to testify about VR's home environment prior to living with appellant. According to the defense proffer, Mr. Richter would have testified that VR's parents ran a combination bar-brothel, that VR was often in the bar-brothel, and that VR mimicked suggestive or erotic conduct that she observed there. Defense counsel argued that this testimony explained where a child such as VR would obtain sexual knowledge beyond her years and explained how VR could fabricate sexual misconduct allegations against appellant. The military judge denied the request for Mr. Richter, ruling that "any probative value that might be existent here is substantially outweighed by the danger of confusion and misleading the court members and inflaming them against the character of the alleged victim in this case."

Defense counsel renewed the request for Mr. Richter after VR testified. He asserted that the door to the relevance of Mr. Richter's testimony had been opened when VR testified that she had gone to live with appellant because it was safer and because her mother worked at night. The military judge found that the reasons VR may have moved in with appellant were not relevant, and specifically stated, "The information relevant to this is speculative, remote in time, collateral, and any minimal probative value is substantially outweighed by the danger of unfair prejudice."

We agree with the military judge that Mr. Richter's testimony was not relevant. Assuming that Mr. Richter observed VR in a bar-brothel run by her parents, his testimony could not have imparted anything about what VR actually observed, and could not have revealed anything about what sexual matters VR understood when she was 6 years old, or what sexual knowledge she obtained at that time. Even assuming that VR could have gained some sexual knowledge by observation in a bar or brothel, the court members would have been left to speculate about the nexus between those observations, the sexual knowledge VR might have had when she was 6, the knowledge she had when she was 15 (the period during which the claims against appellant were investigated), and the knowledge she had when she was 17 and testifying at appellant's court-martial.

### III. CROSS-EXAMINATION OF THE VICTIM

#### A. Background

At an initial session under Article 39(a), UCMJ, 10 USC § 839(a), trial counsel moved, *in limine*, to prevent the defense from questioning VR about the rape complaint she made against Mr. Perez. Trial counsel contended that the allegation of rape was irrelevant and created the danger of a trial-within-a-trial. Defense counsel responded that he intended to cross-examine VR on the rape allegation as a specific act of misconduct, should she happen to state that the allegation was false, to impeach her credibility under Mil.R.Evid. 608(b). The military judge indicated that he was "not going to make any type of a ruling *in limine* that would restrict your rights to cross-examine any valid areas," and specifically stated that he would allow counsel to ask VR whether she had made a false rape allegation. The military judge also indicated that either party could re-address this ruling prior to trial.

A replacement military judge was appointed after the initial military judge was transferred. The new judge considered two motions *in limine* by trial counsel. The first sought to prevent any mention at trial of the bar-brothel in which VR may have observed

and mimicked sexual acts. Defense counsel responded by noting his concern that trial counsel might paint an inaccurate picture of the victim. Defense counsel agreed, however, that he would have to wait until the door was opened for evidence about the bar-brothel to be brought forward. The military judge granted the motion, noting, "[D]efense, if you feel that trial counsel has done something ... and you feel that the door has been reasonably opened, I'll entertain the issue again."

The second motion *in limine* made by trial counsel raised the same issue ruled upon by the first military judge at the initial Article 39(a) session—preventing defense counsel from questioning VR about the rape allegation against Mr. Perez. Defense counsel argued that the prior false allegation of rape against Mr. Perez was relevant to VR's credibility and was a proper subject for cross-examination. Trial counsel responded that the only indication that the allegation was false was the denial by Mr. Perez, the alleged perpetrator, and that this evidence would simply open up extensive collateral litigation. The military judge ruled:

> With regard to the government motion in limine to preclude the defense from cross-examining the alleged victim, [V], under M.R.E. 608(b) about her alleged rape by Mr. Juanito Perez, the court fails to find sufficient basis exists to challenge the witness's truthfulness on this matter based solely upon the denial of the incident by the alleged perpetrator. Moreover, the court finds that the details of this unrelated rape are collateral in nature, not relevant or material to a matter in issue in this case and that any minimal probative value is substantially outweighed by the danger of unfair prejudice and would lead to confusion of the members.

> Should more details be brought forth during the course of the trial that causes defense to believe that a more sufficient basis has been established on this matter, the defense may ask for a 39(a) session prior to the beginning of cross-examination of [V], and ask the court to revisit the issue.

After VR's direct testimony, defense counsel urged that the door had been opened to cross-examination on the subject of the bar-brothel. Specifically, defense counsel urged that VR's comments about moving in with appellant because it would be "safer" for her, comments about her mother working at night, and comments indicating that VR thought sexual intercourse was people kissing opened the door to clarifying those matters for the members and providing this information so that the members could assess VR's credibility.

The military judge denied the request to cross-examine VR about these matters. He specifically found them to be "not relevant" as well as "speculative, remote in time, collateral, and any minimal probative value is substantially outweighed by the danger of unfair prejudice."

### B. Confrontation and Cross–Examination of Witnesses

■ The Sixth Amendment protects an accused's right to confrontation and cross-examination: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *See Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. Anderson,* 51 MJ 145 (1999). Mil.R.Evid. 611(b) establishes the scope of cross-examination at trials by court-martial, limiting cross-examination to "the subject matter of the direct examination and matters affecting the credibility of the witness." Trial judges have broad discretion to impose reasonable limitations on cross-examination, "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall, supra* at 679, 106 S.Ct. at 1435; *see, e.g.,* Mil.R.Evid. 303; *see also Velez,* 48 MJ at 226.

■ A military judge's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *United States v. Schlamer,* 52 MJ 80, 84 (1999); *United States v. Johnson,* 46 MJ 8, 10 (1997). A decision to admit or exclude evidence under Mil.R.Evid. 403 is also reviewed for an abuse

of discretion. *United States v. Lake*, 36 MJ 317, 322 (CMA 1993). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." *United States v. Miller*, 46 MJ 63, 65 (1997); *United States v. Travers*, 25 MJ 61, 62 (1987).

## C. Discussion

 We agree with the Court of Criminal Appeals that the military judge did not abuse his discretion. The substance of Mr. Perez's statement, proffered from a secondhand source, amounted merely to his denial of an unrelated rape accusation made by the victim. As the military judge ruled, the accusation against Mr. Perez was irrelevant to the trial, provided an insufficient basis upon which to attack VR's credibility, had no bearing on the validity of the allegations involving appellant, and did not establish a motive on VR's part to fabricate allegations against appellant.

In the context of limiting cross-examination of a witness, we have held that "[t]he mere filing of a complaint is not even probative of the truthfulness or untruthfulness of the complaint filed.... Thus, its relevance on the question of credibility of a different complaint in an unrelated case, such as appellant's, escapes us." *Velez, supra* at 227 (citation omitted). The record in this case reflects nothing more than a mere complaint of rape made by the victim against Mr. Perez; defense counsel proffered no evidence showing the complaint to be false, other than the unsurprising denial by Mr. Perez. The military judge refused to allow defense counsel to open an inquiry into whether the other rape occurred or whether the victim lied about it when counsel had not established a basis to do so. There was no abuse of discretion in precluding cross-examination into such collateral matters, and appellant has demonstrated no basis upon which to conclude that the ruling was "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." *United States v. Miller, supra.*

 We also agree that cross-examination about a bar-brothel was not relevant to any fact in issue. The reason that VR moved in with appellant, her uncle, was not a fact in issue and did not bear 'on any matter of consequence in the case. Similarly, even assuming that she moved in with appellant to escape the environment of a bar-brothel, that is a fact that does not bear upon VR's credibility.

Defense counsel failed to show a causal connection between the bar-brothel and VR's credibility at appellant's court-martial. VR was 17 years old when she testified. What she might or might not have observed in a brothel at 6 or 7 years of age was not shown to have had any influence upon her understanding of sexual matters when she testified nearly 10 years later. She was no longer a child of tender years. It would be mere speculation to determine what, if anything, she observed in the bar-brothel 10 years earlier shaded her trial testimony or motivated her to testify falsely against appellant.

We also agree with the military judge's balancing assessment pursuant to Mil. R.Evid. 403. Assuming some marginal relevance of the prior rape allegation and the exposure to a bar-brothel environment, any relevance was heavily outweighed by the risk of diverting the members' attention to lurid collateral issues rather than the pivotal facts of the case at hand. The minimal probative value of this evidence did not warrant the risk of expending undue time litigating the facts of the rape allegation or the sexual nature of the conduct in the brothel. The military judge did not abuse his discretion by determining that any probative value was substantially outweighed by those dangers recognized in Mil.R.Evid. 403.

## IV. CONFIDENTIAL COMMUNICATIONS BETWEEN SPOUSES UNDER MIL.R.EVID. 504(b)

### A. Background

Appellant engaged in intimate correspondence with VR for approximately 6 years after he was transferred away from the Philippines. More than 100 pages of correspondence between the two were admitted at trial. The sexual nature of appellant's rela-

tionship with VR was uncovered through this correspondence when his wife intercepted and read a letter from VR to appellant in which VR repeatedly proclaimed her love for appellant and intention to keep her promise to "wait for him."

After reading the letter, Mrs. McElhaney called appellant, who was on temporary duty at the time, and demanded an explanation. According to Mrs. McElhaney, appellant told her that he was in love with their niece, VR, that the relationship had been going on for a long time, and that the two had attempted intercourse on one occasion. Mrs. McElhaney also sent VR's parents a copy of the letter. Shortly thereafter, appellant wrote a lengthy letter to VR's parents, confessing that he and VR had been in love for a long time, detailing their "stolen kisses," and reassuring her parents that the relationship was not sexual. Appellant also wrote a letter to VR, advising her that her aunt and parents now knew about their relationship. As he phrased it, "Well sweetheart, the cat is out of the bag so to speak. Nena read the letter you wrote to me and she also knows that you and I have been in love with each other for years" and "when I return home to Japan, I will keep no secrets about you and me. Well, maybe a few, but I'm going to tell her how much I love you and how long we've been at this."

The substance of appellant's conversation with his wife became an issue at trial when appellant asserted the marital confidential communications privilege in Mil.R.Evid. 504(b) to prevent trial counsel from questioning Mrs. McElhaney about what he said when confronted with his relationship with VR. In an Article 39(a) session prior to Mrs. McElhaney taking the witness stand, the military judge ruled that appellant could not avail himself of the privilege because he was charged with an offense which also constituted a crime against the marriage, citing the exception in Mil.R.Evid. 504(c)(2)(A). During cross-examination, trial counsel asked Mrs. McElhaney if appellant admitted to attempting intercourse with VR, and she answered, "He said—We tried. I got scared, so I stopped." During redirect examination, defense counsel asked Mrs. McElhaney to clarify whether appellant's "we tried" statement indicated penetration of VR, but subsequent interruption of the act of intercourse. In response, she testified: "There's no indication of penetration. He was just—they started kissing and all that, and he got scared, so they had to stop."

The court below rejected the military judge's reasoning, relying upon *United States v. Massey*, 15 USCMA 274, 35 CMR 246 (1965). The court instead found that the statement was admissible because appellant had waived the privilege by disclosing essentially the same information in his letters to VR and her parents. 50 MJ at 830.

## B. The Marital Communications Privilege

■ Many of the evidentiary privilege rules derived from the common law are codified in the military justice system. *Compare* Fed.R.Evid. 501 *with* Mil.R.Evid. 501–12. The spousal privileges are found in Mil. R.Evid. 504. Subsection (b) sets forth the privilege encompassing confidential communications made during marriage:

> *(1) General rule of privilege.* A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law.

> *(2) Definition.* A communication is "confidential" if made privately by any person to the spouse of the person and is not intended to be disclosed to third persons other than those reasonably necessary for transmission of the communication.

This rule requires three conditions to be met for the privilege to be upheld: (1) a communication, (2) intended to be confidential, (3) between married persons not separated at the time of the communication. *United States v. Peterson*, 48 MJ 81, 82 (1998). This privilege may be waived under Mil.R.Evid. 510(a) if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege." We have held, in harmo-

ny with federal civilian law, that communications made in the presence of third parties, or revealed to third parties, are not privileged. *See Peterson, supra.*

 The decision to admit evidence is reviewed for an abuse of discretion. *United States v. Schlamer, supra.* Whether a conversation is privileged is a mixed question of law and fact. *United States v. Napoleon,* 46 MJ 279, 284 (1997). To find an abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." *Miller,* 46 MJ at 65; *Travers,* 25 MJ at 62.

## C. Discussion

 The narrow question posed by this issue is whether elliptical references, voluntarily made to a third party, to the content of a marital communication amount to a disclosure sufficient to waive the privilege under Mil.R.Evid. 510. In the present case, appellant alluded to his conversation with his wife in his letters to VR and her parents, using phrases like—"Well, sweetheart, the cat is out of the bag"; "Nena read the letter and she also knows . . ."; "I will keep no secrets. Well, maybe a few but I'm going to tell her how much I love you and how long we have been at this"; and "stolen kisses." Under Mil.R.Evid. 510(a), we must decide whether appellant disclosed a "significant part" of the marital communication.

The context of the purported disclosure is key to determining whether an accused has waived the marital communications privilege. The holder must voluntarily disclose a significant part of the matter "under such circumstances that it would be inappropriate to allow the claim of privilege." Mil.R.Evid. 510(a). In this case, appellant wrote to VR to warn her that her aunt (appellant's wife) and her parents knew about them—that the "cat is out of the bag." The common understanding of this phrase is that a secret is no longer secret, and in this case, the fair inference is that the "secret" was appellant's sexual relationship with VR. Moreover, appellant gave this warning not to an uninformed third party, but to the one person who would

be intimately familiar with the nature, details, and history of the "secret"—his partner in the illicit relationship. Only VR could understand the import of the letter, which is laden with innuendo about the extent of their relationship and with warnings to beware the hard times about to come since the secret has been exposed. In this context, appellant's references communicate more than the mere fact that a conversation occurred with his wife; they show his intent to have VR understand the overall substance of the conversation by relying upon their shared history. *Compare Engelmann v. National Broadcasting Co., Inc.,* 130 Lab.Cas. (CCH) ¶ 33,325, 1995 WL 214500 (S.D.N.Y. 1995)(wife's deposition answers, taken as a whole, sufficiently characterized conversations with her husband so as to constitute waiver of her privilege in later proceeding), *with United States v. Rakes,* 136 F.3d 1 (1st Cir.1998)(defendant's limited disclosure to an uninformed third party held not sufficient to constitute waiver of the marital communications privilege because the disclosure was minimal and was intended to ward off debt collection, not to reveal what the defendant told his wife).

Appellant's willingness to characterize the substance of his conversation with his wife voluntarily to third parties is highlighted in his letter to VR's parents. In that letter, he denies having a sexual relationship with VR and specifically notes "stolen kisses"—details that correspond with his wife's account of their conversation. We agree with the lower court that appellant's successive, voluntary disclosures to VR and her parents, viewed in the particular factual context of this case, revealed a "significant part" of his communication to his wife and constitute waiver of his marital communications privilege.

## V. EXPERT'S TESTIMONY ON REHABILITATIVE POTENTIAL AND FUTURE DANGEROUSNESS

### A. Background

The Government presented one witness for its sentencing case, Dr. Morales, a child psychiatrist, to testify on appellant's rehabilita-

tive potential and victim impact. Defense counsel objected to the expert's testimony about rehabilitative potential on the basis that Dr. Morales did not have a proper foundation to offer an opinion because he had not examined appellant, reviewed his medical or personnel records, and had gained all of his information about appellant from the victim and observations in court. Counsel was also concerned that, under the guise of rehabilitative potential, Dr. Morales would diagnose appellant as a pedophile and would comment on his future dangerousness, even though Dr. Morales had stated in his proffered testimony that he could not diagnose appellant because he had not evaluated him. The military judge allowed Dr. Morales to testify about specific victim impact and "future dangerousness of the accused." He also permitted Dr. Morales to testify that appellant's behavior was "consistent" with the "profile" of a pedophile, but ruled that the Government could not state that appellant had been diagnosed a pedophile.

Dr. Morales testified before the members that appellant met the criteria for pedophilia and that his risk of reoffending was high. As to rehabilitative potential, he testified:

> Pedophilia in general has a very poor prognosis. All the research shows that the best that one could hope for would be for somebody to get to the point in their lives where they are so afraid of the legal system that they may not act on their urges or impulses, or that the actual urges or impulses go away completely is very unlikely [sic], so that people around this person is [sic] always at risk.

After the military judge pointed out that this statement was a generalization and asked the witness to talk specifically about appellant, Dr. Morales added:

> It's consistent with a poor prognosis would be [sic] that the person was brought in by the legal system. A good prognosis would be somebody who is so disturbed by their behavior that they sought help before the legal system had to intervene. So, based on that, he meets the criteria for somebody with a poor prognosis.

The court below affirmed the military judge's ruling, noting that future dangerousness is an appropriate consideration for an opinion on rehabilitative potential and the fact that Dr. Morales never examined appellant went to the weight of his testimony on pedophilia, not its admissibility. 50 MJ at 831.

### B. Discussion

■ When counsel has objected to testimony, we review a military judge's ruling on the admissibility of expert testimony for an abuse of discretion. *Houser*, 36 MJ at 397. The scope of expert testimony is governed by Mil.R.Evid. 702 and 703. We have required that the proffered testimony meet certain criteria for admissibility: (1) that the expert is qualified, (2) that the subject of the testimony is within the realm of the expert's qualification, (3) that the expert has an appropriate basis for the testimony, (4) that the testimony is relevant, (5) that the testimony is reliable, and (6) that testimony meets the balancing test under Mil.R.Evid. 403. *United States v. Halford*, 50 MJ 402, 405 (1999).

■ RCM 1001 establishes criteria for evidence presented at sentencing. Specifically, RCM 1001(b)(5)(A) permits the presentation of evidence on rehabilitative potential. RCM 1001(b)(5)(B) requires that this evidence be based on a proper foundation—that the witness possess "sufficient information and knowledge about the accused to offer a rationally-based opinion that is helpful to the sentencing authority."

The military judge allowed Dr. Morales to testify that appellant exhibited characteristics in common with pedophiles and to offer an opinion on appellant's future dangerousness based upon those characteristics. He allowed this despite the fact that Dr. Morales was a child psychiatrist, not a forensic psychiatrist, had not examined appellant or reviewed his medical or personnel records, and had testified that he could not render a diagnosis of pedophilia without examining appellant. Although the lack of contact with an accused bears upon the weight to be given to an expert's testimony, not its admissibility, *United States v. Stinson*, 34 MJ 233, 239 (CMA 1992), there are additional factors

present in this case that demonstrate that it was not appropriate for Dr. Morales to offer an opinion on appellant's rehabilitative potential.

Dr. Morales testified that he had no information about appellant's medical history because he had not reviewed any medical or personnel records. Testimony that appellant's behavior was consistent with pedophilia amounted, for all practical purposes, to labeling appellant a pedophile because Dr. Morales went on to give a prognosis for rehabilitative potential that was premised on that assumption.[3] Furthermore, he gave generalized testimony about the rehabilitative potential of pedophiles, did not indicate the source of this information (e.g., personal experience, studies, or literature), and did little to make a specific link with appellant when the military judge noted the error, as the quoted passages above indicate.

The military judge erred by allowing Dr. Morales to testify about the future dangerousness of appellant as related to pedophilia. *Cf. United States v. Latorre*, 53 MJ 179 (2000)(Government did not lay an adequate foundation for expert's testimony regarding rehabilitative potential where expert testified generally about his "studies"). If, as the court below noted, "[e]ven a layman, when given [Dr. Morales's] definition, could conclude, based upon the facts in evidence, that the appellant's behavior with [VR] met these criteria," it is difficult to see how Dr. Morales's testimony on this point offered expert knowledge to aid the court. *See* Mil.R.Evid. 702 and RCM 1001(b)(5)(B).

It is not necessary to determine whether the admission of Dr. Morales's testimony "materially prejudiced the substantial rights" of appellant. Art. 59(a), UCMJ, 10 USC § 859(a). Our resolution of Issue I requires that appellant receive a rehearing on sen-

tence, or in the alternative, that the Court of Criminal Appeals reassess appellant's sentence. We simply note that should a rehearing be held, the Government should be mindful of the need to establish an appropriate foundation for an expert's testimony on rehabilitative potential. Alternatively, should the court below choose to reassess the sentence, it must do so without consideration of Dr. Morales's testimony concerning appellant's future dangerousness.

## VI. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals affirming the findings of guilty of specification 1 of Charge I and specification 1 of Charge IV, and the sentence, is reversed. The findings of guilty of specification 1 of Charge I and specification 1 of Charge IV are set aside and those specifications are dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court may reassess the sentence or order a sentence rehearing.

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

I concur with the majority's decisions and reasoning with regard to Issues I, II, and III, with the dismissal of specification 1, Charge I, and specification 1, Charge IV, and with the decision to affirm the remainder of the findings. Finally, I agree with so much of the majority conclusion as remands this case to the Court of Criminal Appeals for that court to reassess the sentence or refer the case to a convening authority to hold a rehearing on appellant's sentence.

Regarding Issue IV, I agree with the majority that appellant's voluntary disclosures in the context of this case constitute a waiver

---

**3.** As Chief Judge Crawford's separate opinion notes, there are circumstances in which it is appropriate for an expert to testify that an individual's behavior is consistent with the characteristics of a particular behavioral type. As her opinion recognizes, however, Dr. Morales testified that appellant met the Diagnostic and Statistical Manual of Mental Disorders' criteria for pedophilia. 54 MJ at 136. In terms of the effect on the court-martial panel, there is no practical difference between a statement opining that a person is a pedophile and a statement opining that a person meets the recognized diagnostic criteria for pedophilia. In both cases, the court-martial panel would reasonably conclude that an expert had advised them that appellant was a pedophile.

of his marital communication privilege. Although not necessary to the disposition of this issue, I fully concur with Judge Sullivan's view that "[i]t is a crime against the marriage for one spouse to molest the other spouse's child, ... even though the alleged victim was neither a marital nor adopted child of either spouse." 54 MJ at 137.

Finally, as to Issue V, I find no error in the military judge's decision to admit Dr. Morales's testimony on appellant's rehabilitative potential.

A military judge's decision to admit evidence, to include the testimony of an expert witness, is reviewed for abuse of discretion. *See United States v. Raya*, 45 MJ 251, 252 (1996); *United States v. Sullivan*, 42 MJ 360, 363 (1995); Mil.R.Evid. 702, Manual for Courts–Martial, United States (1998 ed.). His decision to admit evidence will not be overturned "absent a clear abuse of discretion." *United States v. Johnson*, 46 MJ 8, 10 (1997), citing *United States v. Redmond*, 21 MJ 319, 326 (CMA 1986).

"Absent a prohibition in the RCM 1000 series, Manual [,*supra*,] ... the analytical model for admissibility of expert testimony is set forth in *United States v. Houser*, 36 MJ 392, 397 (CMA [1993] )." *United States v. Prevatte*, 40 MJ 396, 397 n. * (CMA 1994). Dr. Morales's testimony concerning victim impact was admissible under RCM 1001(b)(4), and his testimony concerning appellant's future dangerousness was admissible under RCM 1001(b)(5). Even if, as the majority finds, Dr. Morales's testimony was inadmissible pursuant to RCM 1001(b)(5), his testimony could still have been admitted under RCM 1001(b)(4) because the future dangerousness of appellant was related to the impact on the victim. *See United States v. Ariail*, 48 MJ 285, 287 (1998).

During the sentencing phase of a court-martial, opinion evidence on the issue of rehabilitation potential is admissible. RCM 1001(b)(5). Like other opinion evidence, expert opinion evidence must be based on a proper foundation. RCM 1001(b)(5)(B). To have a proper foundation, the witness's opinion must be based on "sufficient information and knowledge about the accused to offer a rationally-based opinion that is helpful to the sentencing authority. Relevant information and knowledge include, but are not limited to, information and knowledge about the accused's character, ... determination to be rehabilitated, and nature and severity of the offense or offenses." *Id.*

Expert testimony is permitted in the form of opinion evidence, if the expert's specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. Mil.R.Evid. 702. The military judge's role is to screen the scientific evidence and opinion testimony to make sure (1) that the expert is qualified, (2) that the subject of the testimony is within the realm of the expert's qualification, (3) that the expert has an appropriate basis for the testimony, (4) that the testimony is relevant, (5) that the testimony is reliable, and (6) that the testimony meets the balancing test of Mil.R.Evid. 403. *Houser*, 36 MJ at 397; *see United States v. St. Jean*, 45 MJ 435 (1996); *United States v. Halford*, 50 MJ 402 (1999); *see also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Appellant does not contend that expert testimony concerning future dangerousness and lack of rehabilitative potential of a pedophile is *per se* inadmissible. To the contrary, this Court has found such testimony to be both relevant and reliable. *See United States v. Stinson*, 34 MJ 233 (CMA 1992); *United States v. Williams*, 41 MJ 134 (CMA 1994); *see also United States v. Scott*, 51 MJ 326, 330 (1999).

Counsel's attack in this case on Dr. Morales's testimony is bottomed on a failure of the Government to establish a proper foundation for his opinion. Dr. Morales never met appellant; never reviewed appellant's medical or personnel records; and based his opinion on observations at trial (where appellant did not testify) and two interviews (one with the victim and the other with the victim's mother), as well as some of the passionate letters which appellant wrote to the victim. Accordingly, the defense alleges Dr. Morales had no foundational basis on which to opine about appellant's "future dangerousness."

While predictions of future dangerousness are permissible testimony during sentencing, appellant contends that Dr. Morales's opinion of appellant's future dangerousness was predicated on the fact that he, appellant, met the criteria for pedophilia.

Prior to direct examination, trial counsel established Dr. Morales as an expert witness in the field of child psychology. Dr. Morales is a medical doctor with additional specialized training in psychiatry. His first 4 years of residency training included 14 months in inpatient psychiatry, 4 months in inpatient child psychiatry, and 2 months in the psychiatric emergency room. In addition, his 5th year of residency consisted entirely of work in outpatient child and adolescent psychiatry. In his postgraduate years, Dr. Morales served as attending psychiatrist at the National Naval Medical Center, Staff Psychiatrist at Rikers Island Prison, a Qualified Examiner on the Westchester Medical Center Crisis Team, and Psychiatrist On Call at the Danbury Hospital Emergency Room. Dr. Morales has treated "hundreds" of children, about 20 percent of whom were sexual abuse patients. He was assigned at the time of trial as a child psychiatrist at the Yokosuka Naval Hospital.

Dr. Morales never diagnosed appellant as a pedophile, as made clear by the record of trial. In fact, Dr. Morales categorically stated that he could not render a diagnosis of appellant because he had not examined him. Dr. Morales stated only that appellant met the Diagnostic and Statistical Manual of Mental Disorders (DSM IV) criteria for pedophilia.

Clearly, his status as an expert witness enabled him to render this opinion. Based on appellant meeting the criteria for pedophilia, in addition to the insight which Dr. Morales had gained of appellant through reviewing letters that appellant had written to the victim, and interviewing the victim and her mother, Dr. Morales fairly noted that appellant had an inability to recognize the extent of his problem. An inability to recognize the extent of one's problem certainly translates into a lack of rehabilitative potential, as well as perhaps a future menace to society, in

general, and the victim in particular. *See* RCM 1001(b)(4).

As did the court below, we should apply the test established in *United States v. Stinson* to determine the admissibility of Dr. Morales's expert testimony. *See* 50 MJ at 831. Clearly, the witness was qualified as an expert. The third prong of the *Stinson* test was met, as the material on which Dr. Morales relied in fashioning his opinion was both relevant and factually based. The fourth prong of the *Stinson* test, which we added in *United States v. Banks*, 36 MJ 150 (CMA 1992), was met in this case, as the judge conducted a Mil.R.Evid. 403 balancing test on the record.

What remains for resolution is the second prong of *Stinson*: Was the testimony within the limits of Dr. Morales's expertise? As a medical doctor with additional specialization in psychiatry, Dr. Morales was clearly able to define pedophilia and objectively determine that appellant's intense desire for the victim (who was 9 years old when the relationship started) not only fit within the boundaries of the definition of pedophilia, but also had a future impact on the victim. *See* RCM 1001(b)(4) and (5). Unlike the situation in *United States v. Latorre*, 53 MJ 179 (2000), Dr. Morales's conclusions and opinion were based upon a definition in the DSM IV, not some study that had not gained acceptance in the scientific community at large.

SULLIVAN, Judge (concurring in part and dissenting in part):

I disagree with the majority's decision to dismiss appellant's conviction on specification 1 of Charge I and specification 1 of Charge IV and its decision to remand for a rehearing on sentence or for a reassessment of sentence. I would affirm the lower appellate court's decision, although I do not join its rationale on all the questions of law raised in this case.

Turning to Issue I, I would affirm the decision of the lower appellate court because, in my view, the statute of limitations in the Victims of Child Abuse Act of 1990, now codified at 18 USC § 3283, applied to appellant's case. *See United States v. Dowty*, 48

MJ 102, 112 (1998) (Sullivan, J., concurring in part and in the result); *see also* H.R.Rep. No. 101–681, pt. 1, at 166 (1990), reprinted in 1990 *U.S.Code Cong. & Admin.News* 6572 (stating an intent to bring federal practice in line with "innovative [state] procedures that have far outpaced Federal law, leaving those children who do enter the Federal system (*through military bases,* Indian reservations, and from other federal lands and facilities) inadequately protected") (emphasis added).

Regarding Issue III, I disagree with the majority opinion that the military judge did not err when he restricted the cross-examination of the victim. Mil.R.Evid. 608(b), Manual for Courts–Martial, United States (1995 ed.), allows the defense to cross-examine an alleged victim about past false complaints of rape made against a person other than the accused, as opposed to the mere fact that a complaint of rape was made. *Compare United States v. Stavely,* 33 MJ 92, 94 (CMA 1991), and *United States v. Bahr,* 33 MJ 228, 233–34 (CMA 1991), *with United States v. Velez,* 48 MJ 220, 227 (1998). Nevertheless, in view of my resolution of Issue IV below, this error was harmless beyond a reasonable doubt.

On Issue IV, I would hold that appellant's statements to his wife were not protected by the husband-wife privilege because they fell within an exception to Mil.R.Evid. 504(b), *i.e.,* the alleged victim was a *de facto* child. *See* Mil.R.Evid. 504(c)(2)(A). In doing so, I would reverse the reasoning of the lower appellate court, especially its reliance on

*United States v. Massey,* 15 USCMA 274, 35 CMR 246 (1965). *See United States v. Menchaca,* 23 USCMA 67, 48 CMR 538 (1974) (holding that accused injured his wife when he sexually molested her child by a previous marriage; noting that para. 148e of the 1969 Manual for Courts–Martial (Rev. ed.) made obsolete the holding of *Massey*). It is a crime against the marriage for one spouse to molest the other spouse's child, even though the alleged victim was neither a marital nor adopted child of either spouse. Here, she was covered by this exception because there was testimony that appellant's wife was the guardian of the victim while appellant molested her. (R. at 434). *See United States v. McCarty,* 45 MJ 334, 336 (1996)(Sullivan, J., concurring in the result); *United States v. Bahe,* 128 F.3d 1440, 1446 (10th Cir.1997), *cert. denied,* 523 U.S. 1033, 118 S.Ct. 1327, 140 L.Ed.2d 489 (1998); Mil.R.Evid. 504(b).

Finally, on Issue V, I would hold that the military judge did not abuse his discretion in ruling that Dr. Morales was qualified and had an adequate basis for commenting on appellant's lack of rehabilitative potential. (R. at 578, 581–82). There is no requirement that a psychotherapist expert personally evaluate an accused before rendering an opinion on his rehabilitative potential. *See Barefoot v. Estelle,* 463 U.S. 880, 903–04, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *United States v. Stinson,* 34 MJ 233, 239 (CMA 1992); *United States v. Williams,* 41 MJ 134, 138 (CMA 1994); RCM 1001(b)(5)(B) & (C), Manual, *supra* (1995 ed.); Mil.R.Evid. 702.