# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39549**

————————————

**UNITED STATES**
*Appellee*

**v.**

**David E. MACDONALD**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 September 2020

————————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 31 May 2018 by GCM convened at Ellsworth Air Force Base, South Dakota.

*For Appellant:* Major Meghan R. Glines-Barney, USAF; Major M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Senior Judge MINK delivered the opinion of the court, in which Senior Judge LEWIS and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MINK, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA),

of one specification of murder in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The PTA had no impact on the sentence the convening authority could approve because the adjudged confinement was the same as the limitation on confinement contained in the PTA. The convening authority approved the sentence as adjudged.

Appellant raises five issues on appeal: (1) whether the military judge abused his discretion by considering evidence of an uncharged, and unrelated, intentional abuse when he deliberated on Appellant's sentence; (2) whether the trial counsel's sentencing argument was improper; (3) whether Appellant's sentence is inappropriately severe in light of adjudged and approved sentences for similar misconduct; (4) whether Appellant is entitled to meaningful sentence relief due to the conditions of his post-trial confinement; and (5) whether Appellant is entitled to relief for facially unreasonable appellate delay.[2] With respect to issues (2), (3), and (4), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

On 25 October 2016, Appellant and his wife, SrA PM,[3] took their three-month-old son, EM, to the 28th Medical Group (28 MDG) at Ellsworth Air Force Base (AFB), South Dakota, for examination after SrA PM noticed swelling on the left side of EM's head. A pediatrician at 28 MDG advised Appellant and SrA PM to take EM to the Rapid City Regional Hospital (RCRH), which they did. Medical evaluation at RCRH established that EM had a fracture on the left side of his skull and bleeding in areas around his brain. Later that same day, when interviewed by a civilian law enforcement officer and a civilian social worker regarding the source of EM's injuries, Appellant denied knowing what had caused EM's injuries but "suggested it could have happened when

---

[1] All references in this opinion to the Uniform Code of Military Justice, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant personally raises issues (2), (3), and (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] By the time of the court-martial, SrA PM and Appellant had divorced, and she had returned to using her maiden name. For purposes of this opinion, we refer to her as SrA PM.

[Appellant] accidentally bumped [EM]'s head on the edge of a desk while playing on the computer." Appellant stated he "never dropped [EM] or anything like that." A short time later, Appellant told the law enforcement officer that he dropped EM after giving him a bath on 23 October 2016, and EM hit his head on a baby monitor when he landed on the floor. Medical personnel treating EM concluded that the explanation offered by Appellant that EM hit his head on a baby monitor after being dropped could have resulted in EM's injury, and the baby was released back into the custody of Appellant and SrA PM on 26 October 2016. Appellant and SrA PM took EM to 28 MDG for a follow-up appointment on 27 October 2016. The pediatrician that examined EM during that visit noted that EM was "healing appropriately, feeding well, no further vomiting . . . and overall back to baseline."

On 30 October 2016, after SrA PM observed EM projectile vomiting, Appellant and SrA PM took EM back to RCRH, and the doctors found EM to have "increased and extended" bleeding in the areas around his brain, including additional bleeding on the left side and new bleeding on the right side of EM's brain. No explanation for any additional injury to EM was provided by either Appellant or SrA PM. The RCRH staff found EM's "vomiting and increased bleeding were likely related to the 23 October injury and released [EM]" back into Appellant and SrA PM's custody on 1 November 2016. In the stipulation of fact admitted at trial, Appellant and the Government agreed that "[t]his decline in [EM]'s condition, in combination with increased and additional findings during testing, are indicative of non-accidental trauma."

On 4 November 2016, SrA PM returned to work for the first time since giving birth to EM, which resulted in Appellant being left alone in the home with EM for the first time. After SrA PM departed their on-base residence at approximately 1200 hours, Appellant repeatedly struck EM on the left side of his head with Appellant's hand with a force he knew was sufficient to cause death or great bodily harm to his infant son. At 1317 hours, Appellant called 911 and performed CPR on EM as instructed by the 911 operator until emergency personnel arrived. EM was subsequently transported by ambulance to RCRH. EM never recovered and was pronounced dead on 7 November 2016.

## II. DISCUSSION

### A. Sentencing Evidence Regarding Prior Injury

Appellant asserts that the military judge abused his discretion when deliberating on the sentence for Appellant by considering evidence of the uncharged, intentional abuse of EM. We are not persuaded.

## 1. Additional Background

During presentencing proceedings, the Government sought to introduce the testimony of a military child abuse pediatrician, Lieutenant Colonel (Dr.) SM. Prior to Dr. SM's testimony, the trial counsel made a proffer that Dr. SM would testify that EM's injuries evaluated on 25 October 2016 and on 30 October 2016 were the result of non-accidental trauma. At the invitation of the military judge, the trial defense counsel submitted written objections to Dr. SM's proffered testimony and the trial counsel submitted a response to the trial defense counsel's objections. After reviewing the written submissions, the military judge stated he considered the filings of the parties; the electronic recordings attached to the stipulation of fact, which included recordings of Appellant's interviews with investigators and a 911 call; and EM's medical records. Additionally, the military judge stated that he also considered the cases cited by the parties.[4] The military judge then stated:

> I feel as though I am at a stage where I have to hear the evidence before I make a ruling on whether this is confusing or not, if I'm doing a 403 balancing test. I just articulate up front that just as kind of a baseline of the court's interpretation on this issue, RCM 1001 before it allows the government to present evidence as to any aggravating circumstances directly relating to and resulting from the offenses of which the accused has been found guilty. In this case, the accused through his provident pleas of guilty, the court found him guilty of killing his son who was a three-month old infant. Evidence in aggravation includes but is not limited to evidence of financial, social, psychological, medical impact on or cost any person or entity who is the victim of an offense committed by the accused, and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused offenses. The court in [*United States v. Hardison*, 64 M.J. 279 (C.A.A.F. 2007)], indicated that there are two primary limitations on the admission of aggravating evidence. First, the evidence must be directly relating to the offenses of which the accused has been found guilty,

---

[4] The military judge stated while he considered all the cases to which the parties cited, he found the following particularly helpful: *United States v. Nourse*, 55 M.J. 229 (C.A.A.F. 2001); *United States v. Ross*, 34 M.J. 183 (C.M.A. 1992); *United States v. Mullens*, 29 M.J. 398 (C.M.A. 1990); *United States v. Wingart*, 27 M.J. 128 (C.M.A. 1988); *United States v. Silva*, 21 M.J. 336 (C.M.A. 1986); *United States v. Vickers*, 13 M.J. 403 (C.M.A. 1982); and *United States v. Rhine*, 67 M.J. 646 (A.F. Ct. Crim. App. 2009).

and must pass the [Mil. R. Evid.] 403 balancing test which requires balancing the probative value against its likely prejudicial impact.

. . . .

Again, in consideration of the present circumstances, the accused pled guilty and was found guilty of murder of his infant son in violation of Article 118 of the UCMJ. The acts of the accused occurred on 4 November 2016. The victim in this offense was a three-month-old child. Even as indicated within the medical records, I just note on this anecdotally, page 21 of Attachment 4, is a medical record from the [RCRH]. History or examination limited by the child is unable to give a complete or reliable history. The victim was unable to articulate the circumstances, interactions with the accused. The child is unable to report the circumstances on 26 October, the child was unable or incapable of reporting the circumstances on 30 October, with regards to the circumstance of the injuries and who may have caused them.

The treatment and evaluation relied on results of medical testing. The victim was released to the family based on the medical and scientific findings which included bone scans, CT, MRI, ophthalmology examinations. The events at issue, span approximately 14 days between 23 October and [sic] November. It involves the same victim within days of the child's death, the same location, the same types of offenses being infliction of non-accidental trauma.

. . . Aside from the accused's statements, this case revolves around scientific circumstantial evidence which may present context to the offenses of which the accused has been found guilty of committing. And, circumstantial evidence may reveal an ongoing series of events. The court will allow the testimony at this stage in consideration of [Rule for Courts-Martial (R.C.M.)] 1001(b)(4). After I've heard the evidence, I will then conduct [a Mil. R. Evid.] 403 balancing test.

The military judge then recognized Dr. SM as an expert in the field of child abuse pediatrics and general pediatrics without any objection from the trial defense counsel. Dr. SM testified that she had reviewed various items of evidence, including EM's medical records and autopsy report, and concluded that EM had "suffered multiple episodes of abusive head trauma" between 23 October 2016 and 4 November 2016. Dr. SM testified at length as to the basis of her

opinion, describing EM's medical condition at the time of each visit to a medical provider and upon what evidence she based her opinion.

Dr. SM testified that when EM was brought to RCRH on 25 October 2016, he had a "significant skull fracture . . . on the left side of his head." Dr. SM testified that Appellant's explanation that the injury was caused by dropping EM on the baby monitor was "unlikely" but that she could not "totally exclude a dramatic fall, a drop." However, she opined that EM's injury was "more consistent with non-accidental trauma." Again, on cross-examination, Dr. SM stated her belief that Appellant's explanation was "unlikely," but she did not "rule it out" as an explanation.

When discussing EM's condition when he was brought to the hospital on 30 October 2016, Dr. SM testified that the condition of EM's brain was consistent with "new injury." On cross-examination, Dr. SM stated that there was "no explanation given for the new findings, and the old explanation did not make sense."

Prior to hearing any additional testimony from Dr. SM regarding EM's condition on 4 November 2016, the military judge provided his ruling on the evidence presented by Dr. SM regarding EM's injuries on 25 October 2016 and 30 October 2016. The military judge sustained the trial defense counsel's objection to Dr. SM's testimony relating to the source of the injury that led to the treatment of EM on 25 October 2016. The military judge stated that he would not consider Dr. SM's testimony as to other possible causes of EM's injuries for which EM was treated on 25 October 2016, but would only consider the drop on the baby monitor as a possible source of injury. The military judge then provided the rest of his ruling:

> As to the issue of treatment on 30 October, the overall assessment that there was some additional trauma to [EM] between the treatment and released from the hospital on 25 October and 26 October, until he is seen again on 30 October. This evidence indicates that [EM] was in a state of recovery. Medical evidence indicates that on 30 and 31 October the treatment evaluation reflects that there was some new injury. [sic] Indicates that this is not the result of the prior injury. The medical evidence reveals that there was additional bleeding to the left side of the skull, new bleeding to the right side of the skull, and evidence of injury to the child's brain all consistent with trauma and not reasonably linked to pre-existing injury that led to the child's treatment on 25 October.
>
> . . . As to the evidence of source of injury, the court is capable of assessing testimony and evidence considering both direct and

circumstantial evidence and reasonable inferences there from. The court has before it the testimony of Senior Airman [PM] specifically denying being a source of any injury to the child. The court is capable of considering [Appellant's] credibility and assessments both within the course of the *Care*[5] Inquiry as well as prior statement provided. The court is capable of assessing the evidence and giving it the weight that it believes it deserves.

Again, a fact that is critical to this case, is that we are dealing with a three-month-old incapable, unable to talk to providers, to explain the source of the injury leading to the treatment on 30 October. The court is able to consider the testimony of the witness and relying on the medical evidence which reflects an intervening source of injury. This evidence provides a full nature of circumstances leading up to the death of [EM] of which [Appellant] has been found guilty. And, also provides context both to that injury and the accused['s] crime, as well as an ongoing course of conduct. Under the circumstances, there is no danger of unfair prejudice to [Appellant].

In conducting [the Mil. R. Evid.] 403 balancing test there is high probative value under the circumstances of [R.C.M.] 1001(b)(4), and there is no danger of substantial prejudiced [sic], confusion of the issues, because at the end of it all this court is very mindful that the sentence to be imposed is that to which the accused has been found guilty. How the court uses evidence is within providence of my judicial privilege and determination. *However, again the court is mindful that the accused is to be sentenced only for the offense of which he has been found guilty.*

(Emphasis added.)

### 2. Law

We review a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion. *United States v. Hyppolite*, 79 M.J. 161, 166 (C.A.A.F. 2019) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when:

---

[5] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

(1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Rule for Courts-Martial 1001(b)(4) permits the Government to introduce evidence "as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." The language in the rule does not serve to open the door to "a never-ending chain of causes and effects." *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995) (citation omitted) (interpreting R.C.M. 1001(b)(4)). It also follows that R.C.M. 1001(b)(4) would prohibit "'introduction in general of evidence of . . . uncharged misconduct.'" *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (omission in original) (quoting *United States v. Nourse*, 55 M.J. 229, 231 (C.A.A.F. 2001)).

However, uncharged misconduct may qualify as aggravation evidence when that misconduct is directly related to an offense an accused is guilty of, which means the misconduct is "closely related in time, type, and/or often outcome, to the convicted crime." *Hardison*, 64 M.J. at 281–82. Moreover, the rules governing military sentencing proceedings "provide for accuracy in the sentencing process by permitting the judge to fully appreciate the true plight of the victim in each case." *United States v. Terlep*, 57 M.J. 344, 350 (C.A.A.F. 2002) (citations omitted).

"Sentencing evidence, like all other evidence, is subject to the balancing test of Mil. R. Evid. 403." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citations omitted). Mil. R. Evid. 403 allows the military judge to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, . . . undue delay, wasting time, or needlessly presenting cumulative evidence."

A military judge enjoys "wide discretion" in applying Mil. R. Evid. 403. *Manns*, 54 M.J. at 166 (citation omitted). "When a military judge conducts a proper balancing test under Mil. R. Evid. 403, the ruling will not be overturned unless there is a 'clear abuse of discretion.'" *Id.* (citation omitted).

### 3. Analysis

The evidence already before the military judge as reflected in the stipulation of fact established that EM was suffering from a fractured skull on 25 October 2016 and had improved by 27 October 2016, but three days later on 30 October 2016, his condition had worsened. After hearing Dr. SM's expert testimony regarding EM's condition on 25 October 2016 and 30 October 2016, the military judge sustained the trial defense counsel's objection as to consideration of Dr. SM's testimony regarding other possible causes of EM's injuries on

25 October 2016. Appellant does not allege the military judge erred in considering these facts.

However, the military judge came to a different conclusion as to the cause of EM's injuries for which he was treated on 30 October 2016. In his detailed ruling quoted above, the military judge considered Dr. SM's testimony in view of R.C.M. 1001(b)(4) and the applicable case law. In arguing on appeal that the military judge abused his discretion, Appellant cites the same cases in his appellate brief that the military judge relied upon when making his ruling. Dr. SM's testimony related to EM's injuries five days prior to Appellant's criminal actions that resulted in EM's death. As noted above, in the stipulation of fact admitted at trial, Appellant and the Government agreed that "[t]his decline in [EM]'s condition, in combination with increased and additional findings during testing, are indicative of non-accidental trauma." Dr. SM's expert testimony simply reinforced and expanded on this fact that had already been agreed to by Appellant.

Not only were the nature and cause of EM's injuries on 30 October 2016 in close temporal proximity to the fatal injuries EM suffered at the hands of Appellant, the exclusion of such evidence would have left the military judge a diluted version of the events for which Appellant had been convicted. As the military judge noted in his ruling, "the events at issue, span approximately 14 days between 23 October and [sic] November. It involves the same victim within days of the child's death, the same location, the same types of offenses being infliction of non-accidental trauma."

Putting aside the cause of the traumas EM suffered, there is no question that Appellant was well aware of the injuries EM had suffered resulting in EM's hospitalization on 25 October 2016 and 30 October 2016 when Appellant struck EM repeatedly on the left side of EM's head on 4 November 2016. Therefore, we find that Dr. SM's expert testimony regarding EM's injuries on 30 October 2016 was permissible under R.C.M. 1001(b)(4) because it was directly related to the charged offense and showed the full impact of Appellant's crime. The military judge did not abuse his discretion in admitting and considering this evidence.

The military judge also performed a proper Mil. R. Evid. 403 balancing test, finding high probative value and no danger of unfair prejudice or confusion of the issues by considering Dr. SM's testimony regarding EM's injuries as of 30 October 2016. The military judge, as the sentencing authority, is "presumed to know the law and apply it correctly." *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009) (per curiam) (citations omitted). Morever, in this case, the military judge noted on the record that he, as the sentencing authority, was well aware that he was only sentencing Appellant for the crime to which Appellant had pleaded and been found guilty, irrespective of Dr. SM's testimony

regarding EM's injuries on 30 October 2016. Again, we find that the military judge did not abuse his discretion by considering Dr. SM's testimony.

Even assuming *arguendo* that the military judge erred by admitting evidence of the injuries of which EM was suffering on 30 October 2016, Appellant has failed to establish prejudice under the facts of this case. "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). We consider four factors when determining whether an error had a substantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citations omitted).

We find that the Government's case was strong, supported by a stipulation of fact and a guilty plea inquiry both of which described the facts and circumstances of the offense to which Appellant pleaded guilty. By comparison, the Defense's case was relatively weak, relying on the fact that Appellant pleaded guilty and asked for mercy in sentencing. The materiality of the evidence was limited because of the similar information presented in the agreed-upon stipulation of fact. The quality of the evidence was unchallenged. We find that the balance of these four factors weighs in favor of the Government. Having given careful and individualized consideration to Appellant, the nature and seriousness of his offense as shown by the facts and circumstances, Appellant's record of service, and all other matters contained in the record of trial, we conclude that even if the military judge erred by allowing evidence indicating that EM's condition on 30 October 2016 was the result of non-accidental trauma that error would not have had a substantial influence on the sentence imposed by the military judge.

## B. Timeliness of Appellate Review

### 1. Additional Background

Appellant's case was originally docketed with this court on 2 October 2018. As Appellant correctly asserts, the delay in rendering this decision after 2 April 2020 is presumptively unreasonable. However, we determine there has been no violation of Appellant's right to due process and a speedy post-trial review and appeal.

### 2. Law

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F.

2003)). In *Moreno*, the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of facially unreasonable delay when the Court of Criminal Appeals does not render a decision within 18 months of docketing. 63 M.J. at 142. Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id*. at 136 (citing *Barker*, 407 U.S. at 533).

However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted).

### 3. Analysis

This court is affirming the findings and sentence in this case. We find no oppressive incarceration because Appellant's appeal has not resulted in any reduction in his term of confinement. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id*. at 140. We discern no such particularized anxiety in Appellant's case. Lastly, where the appeal does not result in a rehearing on findings or sentence, as in this case, Appellant's ability to present a defense at a rehearing is not impaired. *See id*.

Where, as here, there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. With regard to appellate review, the delay in issuing the court's opinion exceeded the 18-month *Moreno* standard by approximately five months. On the whole, we do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *Id*.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appro-

priate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court